May it please the court, my name is Viswanathan Rudrakumaran. I represent the petitioner Soni is also on the line. Yes, good morning, Your Honor. This is Anitana Tunla for the respondent, the Attorney General. Okay, thank you, Ms. Tunla. All right, so Mr. Rudrakumaran, am I saying that right? Yes, Your Honor. Yes, Your Honor. Thank you. You have reserved two minutes, so you'll have eight now and two later. You'll get a warning at about the seven minute mark. We'll give you a couple of minutes to get started. So go ahead. Thank you, Your Honor. I would like to start by quoting Judge Posner in Cardia v. Gonzalez, that deference is earned, deference is not a birthright. And I also would like to emphasize that deference is given only to the facts that are grounded in the record and not the IG's assertions which are not grounded in the record. Now in this case, the agency made adverse credibility findings based on four reasons, alleged reasons. The first thing the agency said that he had problem in 2011 and he had problem in 2012 and he did not state that in his application or in his direct testimony. But I would like to also emphasize the immigration judge in her opinion repeatedly said that during this time record that indicate he ever said that since 2011, he's been living with fear. The question was asked, were you in fear in 2011? Because he got the passport at that time. Then he said, yes, my friends got attacked. I was fear. That's it. Then the government moved on. Even the government did not bother to ask any more questions. Then after that incident, after the 2011 incident, then he joined the party. So if he were really fearful, he would not have joined. But he joined the party. And this is Judge Lynch. Am I right or wrong that later in his testimony, Mr. to admitted or I don't want to characterize it adversely. He stated that he didn't get the passport in 2011 because he was in fear that he got the passport in 2011 because his family wanted him to emigrate in order to make money. Isn't that right? Precisely. So what your what your he didn't try to argue at his in his testimony that he'd always been in fear. And that's why he got the passport. And he was trying to salvage this issue of the passport. He acknowledged that he got the passport for a different reason. And that was only in 2014. After these other incidents, that he began to have a level of fear that he's relying on for his application. Precisely. Precisely. That's the case. So the 2011 incident and 2012 incident has nothing to do with the reason why he left the country in 2015. This case falls within the four square of concrete guy was a session. The court has addressed this issue very forcefully. In that case, your honor. In that case, the court said that it is true under the Real ID Act, you can take any court said this court said a trivial inconsistency or omission that has no tendency to tendency to suggest a petition of fabricator. He's so clear. There's nothing in the thing that that whatever happened in 2011 or 2012 had to do with what happened in 2015. It doesn't help. It doesn't fabricate anything. There is nothing to say. Those incidents help him to fabricate a story in 2004 or 2005. Okay, but there are other inconsistencies that the immigration judge relied on. May I ask you about one of them? And you'll have time to talk about all of them. But the the birth certificate, the birth certificate is in two languages. One is English. Is the other one? Do you know what the other one is? Is it Punjabi or Hindi or something else? I'm also not I'm not from India, you know, but my my understanding is Punjabi. That language. But is there is there is there any and the English language says that the person whose birth certificate is this is is female. Is there anything in the record that says what what it says in Punjabi or whatever the other language is? No, nothing. Nothing in the record that that talks about that direct translation of that Punjabi word. Probably the idea could have asked the interpreter to read the Punjabi word to translate. But but there's nothing there. But my point on this issue on if you look at the first line of the ideas decision or the BIA's decision, they start by saying the respondent is a native and citizen of India. So identity is not an issue at all. No, they even insinuated there is a problem with identity. That's not an issue. So this case is distinguishable with from matter of OD and even matter of OD stands for a proposition that if you submit a fraudulent document, then you are in problem. But here there's no suggestion that it was a fraudulent document. There's no such thing. And in addition, I would think that there's no I can see no reason to to falsify the document in this way. And I can't see anything here other than a bureaucratic mistake. Yes. But maybe there's maybe the other side is making an argument that somehow this is is not that and that somehow this is related to an attempt to deceive the authorities. But my my understanding is the birth certificate is issued by the government. And and your client would have nothing nothing really to do with that. Not only that, he was not even aware of it. He was not even aware of it. When the government asked, did you go did you see the birth certificate? He said, yeah. Do you know anything wrong with that? He said no. So he was not even aware of it. But in matter of OD, the BIA said he argued it's a fraudulent document. If the if the petitioner is aware of the fraud or also connected to the fraud, then only the problem. But if the petitioner is not aware of the fraud, it is not a problem here. He's not even aware that there was a mistake until the government pointed out that that there is being said as a female. So it says that. Can I ask a question about the statement about going to live with his grandparents? Yes, your honor. I come to the truth, too. I would like to add that in two ways, your honor. The first, he said that it's a grandparent's house. Even after they are deceased, they are dead. Still, it's called as a grandparent's house. Well, I got in a statement in a statement. He said I went to go live with my grandparents. He didn't get my grandparents. Yeah. He said I went to live with my grandparents. No, no, that is, as the petitioner's counsel stated in the in the brief, it was maybe a translation or a typographical error. But I would like to point out the typographical error. You're not the counseling in his brief said, you know, but you have one more minute. OK, my main argument in the credible fear interview before he submitted the application on page transcript three to nine, he said, yes, I hid in my grandparent's house for two months. He did not say this is before he submitted his application, the credible fear interview. He said, I hid in my grandparent's house. That's on page three to nine. So it was a simple error, your honor. And because in the mother's letter also, I tend to live with relatives. And he and he himself submitted a letter from the maternal uncle stating he came and live with me. He said, that's my point. I mean, it seems to me that I mean, I wasn't there. But the personal statement says I went to live with my grandparents. Those would be witnesses that one might expect letters from if that were the case. But then it turns out, of course, that they are deceased. So an inference could be drawn that this was an attempt to mislead. No, you know, but if you look at the credible fear interview in the credibility that before he submitted the application, he said, I went and lived with the grandparent's house. So except that particular line in the application to his testimony and the corroborative evidence and credible fear interview worksheet everywhere, he said, I went and lived with my grandparent's house. What was the was the the affidavit that he submitted that says with my grandparents, was that translated by someone or did he write that in English? No, the lawyer said it was translated by in his office. So the lawyer said it may be a problem. They made it or something. Well, excuse me, maybe is perhaps not enough. The finding of the immigration judge can be overturned if there is a compelling explanation. The immigration judge. Correct me if I'm wrong. Didn't the immigration judge inquire as to the interpreter who was present at the hearing, not the interpreter who translated this, but asked that interpreter in the relevant language, is there a distinction made between living with my grandparents and living in my grandparent's house? And the interpreter said, in effect, as in English, those would be expressed in two different ways. All right. Yeah. Is that not a fact? That is a fact. I'm not disputing that. I'm not arguing both the same. I'm arguing only grandparent's house and maternal grandparent's house. That is the same. But I'm not arguing living with the grandparents and living in the grandparent's house are not the same. I'm not arguing that. I'm saying that was a mistake. But if you take the record as a whole, that's only two lines. If you look at the credible fear virtue, that's very important. OK, OK, I get your argument. Mike, I have a question on this point. My understanding is that the application, his application said that his mother sent him, quote, to go live with his grandparents. And it didn't say I went to live with my grandparents. It was just a statement that his mother sent him to go live with his grandparents. Now, I assume that he went to their house and his uncle was there. Is that because they were dead? Is that am I mixing anything up or is that accurate? I don't know. With all due respect, I don't think that's accurate. What the mother said, I sent him, I asked, I sent him to live with my relatives. Now, the life of my son was in danger. It's on page 160 on it. He was sent to live with the relatives. He did. She did not say in her affidavit that she sent him to live with the grandparents. This only came only in the application. There's nowhere else in the record either mother or uncle. Anybody's talking that he was sent to live with the grandparents. No. Well, no, I'm talking about the application. I just want to understand. Yeah, I want to understand specifically what the application said and what the what what the asylum notes were. And then ultimately, would he testify? And I think during direct testimony, he said that his mother sent him to his maternal grandparents' place, which is different than saying to live with my grandparents. And that's that's the difference, right? The application said mother sent him to go and live with live with his grandparents in Cancun. And he said his mother sent him to his maternal grandparents' place. Is that accurate? That's accurate. He was sent to live at the maternal grandparents' place, not with the maternal grandparents. That's what he said in his direct testimony. Yes. Which is in conflict with his application. Yes. But if you take the totality of the evidence, that's only three words in that application. But you take the credible asylum notes and his testimony and the uncles, he himself put the uncle's affidavit saying, no, he came and lived with me. If he has any any fabrication or deception, he would not have submitted the uncle's affidavit. He submitted the uncle's affidavit to say, no, he lives with me. But where did he live with the uncle? Did he live with the uncle at the grandparents' former house? Yeah. Yeah. Yeah. Yeah. Yeah. That's what the maternal uncle was living at the grandparents' house. He went and he lived with the maternal uncle in the grandparents' house. That's sort of an odd way to do it, though, isn't it? I mean, the first day I went to go live with my grandparents, then have the mother say I went to live with relatives, and then eventually it's boiled down to an uncle. That could be perceived as evasive, no? No, you know, I don't think because he said, you know, in his testimony, he was sent to live at the grandparents' house. Then the question asked whether which grandparent, then only it came out that the grandparents are dead. Mr. Vijayakumaran, is it part of your alleged omission of the 2011 events or the 2011 fear? And if we find that it is error to treat the female birth certificate issue as an inconsistency or something that bears on his credibility, and if we find that the immigration judge and the BIA's reliance on the absence of corroboration falls through because that's based on the same business about not mentioning 2011, and we are left with a contradiction about grandparents' house or grandparents, is it a part of your argument that we then can't be sure whether based on that single inconsistency that remains, the immigration judge and the BIA would have reached the same conclusion and we should send it back for further proceedings? Yes, Your Honor. Even the immigration judge did not give much importance. She was mostly focusing on 2011 and 2012, Your Honor. So if you take the record as a whole, she put all the evidence pertains to 2014, 2015, and the judge, you know, simply she was using the buzzword, taking the record as a whole, taking the record as a whole, but nothing indicate that whether she really went through those affidavits, Your Honor. So in that, as the court said, Your Honor, appropriate remedy is to remand, to inquire more about it. Maybe they can get this original version, Punjabi version, and then that can be translated officially, and then the judge can compare it, Your Honor. Okay, all right. Thank you. You've reserved two minutes. Yes, Your Honor. Ms. Otunla. Okay, thank you, Judge. Yes, good morning. May it please the court, Anitha Otunla, on behalf of the Attorney General. Your Honor, the sole question, as opposing counsel mentioned, is whether the record would compel, which is a high standard, reversal of the agency's denial of relief from protection based on this adverse credibility determination, which is based on three specific incogent inconsistencies, which, contrary to opposing counsel, these are grounded in the record. As to the first finding, Your Honors, we're asking about Mr. Ratu's fear. This is a specific incogent inconsistency, which an adverse credibility determination can be relied on. Well, help me out with this, Ms. Otunla. This is Judge Lynch. I perfectly well understand that if an applicant writes in his application, I'm in fear because I was beaten in 2014. Then he comes to the hearing and says, I'm in fear because I was beaten in 2014. Also, they did terrible things in 2011, too, to other people. I was already in fear from that. That's two things now I've got that support my asylum application. That clearly would be an inconsistency, and the immigration judge would be entitled to rely on it. That's not what happened here, is it? Exactly what happened here, Your Honor. Did he testify in his direct testimony to anything about 2011? In his no, Your Honor. In his direct testimony, he only talks about joining the party in 2014, and after that... Exactly. Then on cross-examination, he was asked, and I think this is a very reasonable question for the government to ask, but isn't it a fact that you got your passport not in 2014 but in 2011? Let me correct you, Your Honor, if I might respectfully disagree. The question wasn't about the passport. It's on page 127 of the record. The question was, were you afraid for your life in 2011? Exactly, exactly. And he said, yes. Excuse me, Ms. Otunla. The point of the question is that that would tend to show, that would tend to discredit his claim that he left the country because of fear, because he was already intending to leave in 2011. He was asked, are you afraid? Now, if he then left it at, yeah, I was afraid all along, and I'm sorry. I should have said that all along. I've been afraid from 2011. That's why I was seeking asylum. That would be an inconsistency, but he didn't do that. He eventually says, not under fierce cross-examination, but he says on redirect, I'm not relying on, I'm admitting to you, of course, I got the passport, not because I was in fear. So what is the problem? Why is it a problem that he didn't put in his affidavit that he had concerns for his safety at some point in 2011 just because he's hanging out with these fear as part of his application? He didn't put it in his affidavit, and he didn't claim at his hearing that that's part of why he should get asylum. So why does this even matter? Because it matters, Your Honor, because his entire claim and the basis for his fear for fleeing India was his involvement and participation with this party, and he admitted it's a significant omission, in my opinion, because this participation and involvement occurred prior to his joining the party. And this, you know, Gao mentioned that a trivial omission wouldn't count or wouldn't be able to sustain, but a fact of which a witness would reasonably be expected to disclose. And I think looking at the totality of the circumstances... But why? I think you're focused on the application. Anything that could conceivably in the remotest way bear on his entitlement to asylum, he has to put in the application what he's relying on. And maybe if he was hanging around with these guys before and had some concerns or some fears, why does it matter that he doesn't include that if he's not relying on that? And if it also doesn't bear on his credibility with respect to the passport, because he acknowledges openly that at that time he wasn't so much in fear that he was getting a passport to try to get out of the country, he got a passport for economic reasons, and then for whatever reason never used it. Now he claims he only used it, and this has been his consistent position all the way through. Once the events of 2014 put him in sufficient fear that he leave the village in the first place, go live around his grandparents, and eventually leave the country. What is problematic about any of that? It was problematic. What the agency found problematic, Your Honor, is that this wasn't an augmentation or an addition or elaboration of detail. This was... He presented his claim that everything that he feared and his whole issue with India and his inability to reside there safely started based on his participation going to these meetings which occurred in 2014. Exactly. Now did he ever, excuse me, did he ever at the hearing say, no, actually my fear that matters here began at some earlier time? It's just a question, were you afraid in 2011? He said, yeah, you know, whatever. And that's what the immigration judge, Your Honor, was based in this finding on. And this court has held that when there are two permissible views of evidence, the fact finder's choice between them cannot be clearly erroneous. And so this is the immigration judge who is in the best position to discern and to make this credible determination. Is it really a permissible interpretation of the facts? He joined the party in 2014 after, you say, he said there was all this fear which augments his problems now. And he doesn't mention it in direct. As far as he's concerned, as far as I can tell, he's concerned what happened to him after he joined the party when he was beaten on a couple of occasions. And that the fact that he might have incidentally on cross-examination admitted that there were some fears before that doesn't seem to be inconsistent. It seems to be easily explained. If I might add, Your Honor, the question in his asylum application, it's an open-ended question. It doesn't ask him, you know, what was your recent experience that caused or triggered your fear of persecution in India? It's an open-ended question that he was asked, which he filled out with the assistance of an attorney. He was represented at the time he filled out the application. And so does that mean that if he was beaten by a bully when he was nine years old, he really ought to include that because that's another thing that he was afraid at one time in his life in India? Well, no, Your Honor, but the distinction here would be this fear in 2011 is regarding the Man Party, which is the party that he's claiming a fear of persecution. So that's why it's linked in that it's the same alleged persecutor. And I would say, like, my understanding is that if he alleged that, and you accept that, that he was afraid in 2011 and 2012, then how do you explain the fact that he joined the party, which was the source of all of this opposition that would put him in fear? It just seems to me that he threw that in, or he mentioned it because it was asked on cross-examination. He was trying to be truthful, but it really wasn't at the top of his mind. He never applied on that basis. He applied on the basis that he had joined the party, and because he had joined the party, people were after it. Go ahead. Sorry. I was saying that the record doesn't indicate why he, after that 2011 fair, chose to join the party in 2014. But the immigration judge, who's the one who is listening to the claim, found that this was an attempt on cross to bolster his claim in that he then found that on cross, some information that he hadn't, you know, he hadn't hinted at in his application hadn't given on cross, sorry, on direct rather. Right, which would matter intensely if he was trying to use that to either get out of an argument that the early getting of the passport undermines his claim about why he's leaving the country, or if he were using it to try to bolster his application. But I'm having trouble when he specifically, he says I was in fear, but then he explicitly disavows any reliance on that fear. He explicitly says that I'm not, excuse me. Sorry, I think that that last part of the statement, Your Honour, goes towards the passport. But the initial yes is where you're afraid for your life. Excuse me, you have one more minute. Since I have a little bit of time, can you address the birth certificate issue? Is there a contention by the government or a finding by the agency that this was a forged document that it's not really his birth certificate? So, Your Honour, there was no finding by the agency that this was a forged document per se, or that it wasn't his birth certificate. Is there, there's no, excuse me, so there's no argument at all by the government that this is either a fake document, or that it is not his actual birth certificate, whatever it says on it. You're absolutely right, Your Honour, there was no finding as to it not being his birth certificate. Was there even a contention by the government that this was a fraudulent document, or that it's somebody else's birth certificate, not his? No, the only finding that the integration judge and the agency put forward was that there was some error in the birth certificate, which did infect, quote, unquote, according to CE, or put a tinge of question in the balance of the record. So why would an error in a document that he did not create affect his credibility with respect to the events that put him in fear, or anything else that's relevant to the case? Well, Your Honour, because even though his identity was not an issue per se, identity is always something that has a bearing on an asylum withholding case. And if I might point out that paragraph in the agency decision, it states by sole basis for the adverse credibility finding. I understand it's not the sole basis. The question is, as your adversary argued, there are four things in this case that are relied on. And the question is, if they're not all accurate, what happens next? So the question here is, does this have any bearing on his credibility? And I'm asking you to explain why it does. I understand it's not the only one. So it would have some bearing on his credibility, Your Honour, because he's proffering a document which had false information would infect or would seem to suggest to the immigration judge that he was proffering a false document. Is there anything in the record that tells us whether the error appears in the part of the birth certificate that is written in the only language that the applicant seems to be fluent in? No, Your Honour, there's no indication in this record at this time. So what the record shows is that the gentleman has a birth certificate that is in his name, that no one contends is not his actual birth certificate issued by the government agency in India that says in English, a language that it's clear he does not fluently speak, that he is a female, which he is not. And for that reason, he is not to be believed, or that is something that contributes to disbelieving his story about his involvement with the Sikh political party and the adverse consequences that flowed from that. Yes, Your Honour, the agency found that it appeared that based on that, which was a translation in English that said female, that petitioner was requested in court to rely on a document that was facially inaccurate. And that was the basis for the credibility determination. The real problem is that he didn't back in India recognize this mistake and go and get an amended birth certificate, which he would then have presented to the government. And there would have been an argument that, hmm, how come this birth certificate was issued so belatedly right before, or is a new one that you got from here or something like that? That sounds a lot more Your Honour, and he was given the opportunity because... Right, and he said, I never even noticed this. I didn't know this. He's asked, is there something wrong with this document? I don't see anything wrong with the document. Right, Your Honour, but it's his burden. And he presented his asylum application with his birth certificates and his affidavits. And it's his burden to show... To prove that he's not female. No, Your Honour, to prove that he has some fare and, you know, based on the man party and that he is who he says he is, and an adverse credibility determination could be made based on an omission or an inconsistency such as this when looked at the totality of the circumstances. And I know I might be out of time, Your Honour, but I did want to briefly address the third point because you had a number of questions to opposing counsel, which I did want to add something to, if I might. You may, go ahead. Um, so, to that point, the question about whether Petitioner lived with his grandparents or lived at his grandparents' home, I think it is a significant omission because the record, and just to correct opposing counsel, it was Petitioner's own statement. And so, choice of words matter. It wasn't in Petitioner's mother's affidavit. It was Petitioner's own record where he said, my mother had no choice but to send me to go and live with my grandparents. And even though he may have written this affidavit initially in Hindu or Punjabi, I'm not sure, it was translated. And before the immigration judge, he said that he'd read all the documents and they had been translated or read back to him in a language he understood. They were accurate. He had counsel. And so, I do think it is significant. Choice of words does matter. Yes. And suppose I agree with you about that, that it is very potentially a significant inconsistency. Did the agency say that this was a significant inconsistency or did the agency sort of throw this in as an extra thing explicitly, relying primarily on the other thing, especially the omission of the problems in 2011, and then said, well, and there's also this. Is that not what the agency said? Your Honor, I would say in this instance, the agency relied on this as a significant omission because, and my comparison would be in that second paragraph of the agency decision where they're referring to the birth certificate. In that paragraph, they say this is not the sole basis for the adverse credibility finding because they're acknowledging that the error with the birth certificate might not in and of itself be enough to sustain an adverse credibility determination. Can we be confident that the agency would have reached the same result if this error about the grandparents or inconsistency about the grandparents was the only thing that was a question for his credibility? Absolutely, Your Honor. And I point again to that sentence where the agency is carving out that the birth certificate might not be enough, but the other two, the agency has analyzed them and it's saying that these are significant. There's no reference to them saying or hinting that that might not be the sole basis. Based on the analysis and the lack of indication, the agency is saying that these two are enough, and even one of them is enough in and of itself to sustain an adverse credibility determination. The judge said this was material because it would be witnesses. Presumably, his grandparents would be the witnesses you'd expect letters from, right? Exactly. And relocation, and again, it's significant in that it has a bearing. If an individual is able to relocate and hide, this affects an asylum application. It does have a bearing, is a factor that immigration judges will consider. All right. Thank you. We'll hear from... I'm going to make sure I pronounce your name right, Mr. Redukumaran, for a two-minute rebuttal. Okay. Yes. Briefly, Your Honor. The agency did not ever say that they can sustain the adverse credibility finding based on this grandpa problem. They said in the paragraph, in addition. So they take all these things into consideration, not on one basis. They said that, okay, this is enough for the adverse credibility finding. They used the word on page four, in addition. Then they also used furthermore. So they took all these four factors to make that, to sustain the adverse credibility determination. There's no indication that based on this grandpa problem alone, they would have sustained the adverse credibility determination. And regarding the 2011, Your Honor, the government said on page 127, that talks about fear. But if you look at page 126, the last line of 126, that question came in the context of the passport. When did you obtain the passport? 2011. Did you have any fear? So it's all in the context of 2011. And then the judge asked him, why you didn't put in the application? He specifically stated, I put whatever happened to me after I joined the party, on page 134. So the omission has nothing... It means you have one more minute. The omission has nothing to do with the case. And also the court in conflict versus session addressed also when you elicit something during the cross-examination, rather on the direct examination. With direct examination, probably then you can say you won't bolster your claim. But this came in a cross-examination, and the court said that's less probative. It's clearly false within the case, Your Honor. That's all. Thank you. All right. Thank you very much to both of you. We will reserve decision.